## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

CHRIS WANKEN,

          **Plaintiff,**

    v.                                         **Civil Action No. 3:12-CV-2107-BK**

DWIGHT WANKEN,

          **Defendant.**

### MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the undersigned Magistrate Judge, this cause is now before the Court on Defendant's *Motion to Dismiss Pursuant to Rule 12(b)(6)or, in the Alternative, for More Definite Statement*.  (Doc. 27).  For the reasons that follow, the *Motion to Dismiss* is **GRANTED IN PART**.

### BACKGROUND

Plaintiff filed this *pro se* action in July 2012 against Defendant, his father, asserting claims under the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), and the Internal Revenue Code.  (Doc. 3 at 2, 9-13).  Plaintiff alleges in his complaint that he and Defendant verbally agreed to operate a financial services firm as partners, but Defendant ultimately terminated Plaintiff's financial services license in March 2008 for personal reasons.  *Id.* at 2-3, 5.  Plaintiff states that he filed an action in state court against Defendant for breach of contract, and Defendant moved to compel arbitration.  The case was arbitrated before the Financial Industry Regulatory Authority ("FINRA") and ultimately resolved unfavorably to Plaintiff when, according to Plaintiff, Defendant allegedly falsely testified that Plaintiff was not his partner, but was merely a low-level administrative employee.  *Id.* at 5-8.

In his FLSA claim, Plaintiff asserts that he regularly worked over 40 hours per week, but Defendant did not pay him the overtime compensation which was required if Plaintiff was truly his employee. *Id.* at 9-10. Plaintiff also alleges that Defendant violated multiple provisions of ERISA with regard to how Defendant "classified" him, and Defendant never made mandatory contributions to a qualified retirement plan for Plaintiff. *Id*. at 11. Finally, Plaintiff claims that Defendant violated the Internal Revenue Code in order to evade paying employment taxes, and he forced Plaintiff to pay self-employment taxes that Defendant should have paid. *Id*. at 11-13. Defendant now moves to dismiss and, alternatively, requests that the Court order Plaintiff to file a more definite statement. (Doc. 28 at 8).

## APPLICABLE LAW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity because the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).

2

## ARGUMENTS AND ANALYSIS

1. **ERISA Claim**

Defendant first urges that Plaintiff's ERISA claim fails because no ERISA-related employee benefit plan exists; thus, Plaintiff cannot prove that he had the right to enforce the terms of any such plan. (Doc. 28 at 3-4). Defendant also asserts that Plaintiff has not alleged that he exhausted ERISA's required administrative procedures. *Id.* at 7-8.

Plaintiff responds that Defendant made regular contributions for himself to a Simplified Employee Pension plan ("SEP") and, as such, ERISA required Defendant to make similar contributions for Plaintiff if Plaintiff was indeed Defendant's "employee." (Doc. 31 at 5-7). Defendant replies that an SEP is simply an individual retirement account, which is not the type of account that falls under ERISA. (Doc. 37 at 2-4). Defendant maintains that he established the SEP on his own as a self-employed individual and as part of his own retirement plan, which Plaintiff conceded by acknowledging that Defendant's SEP was "his own retirement account." *Id.* at 3-4.

As an initial matter, the Court must consider the types of ERISA claims that Plaintiff is raising before discussing whether any of those claims are viable. Plaintiff contends in his complaint that Defendant's actions violated three ERISA provisions, namely sections 1131, 1132, and 1134. (Doc. 3 at 10-11). Section 1131, however, sets forth the criminal penalties available for willful violations of ERISA. In order for a private right of action to exist under a criminal statute, there must be "a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Cort v. Ash*, 422 U.S. 66, 79 (1975). Nothing in section 1131 indicates that it is anything more than a "bare criminal statute," demonstrating that no civil enforcement of any kind is available. *Id.* at 79-80; *see also Linda R.S. v. Richard D.*, 410 U.S.

614, 619 (1973) (stating that a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another).  Accordingly, any claim that Plaintiff is attempting to bring under section 1131 must fail.  Section 1134 also does not provide a private cause of action as it merely sets forth the powers of the Secretary of Labor to conduct administrative investigations.  29 U.S.C. § 1134.  Accordingly, Plaintiff's purported claims under sections 1131 and 1134 are **DISMISSED WITH PREJUDICE**.  *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations).

Section 1132 does, however, allow a private cause of action to be brought by an ERISA plan participant or beneficiary to, *inter alia*, "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a).  Thus, Plaintiff potentially may state a claim under section 1132 if Defendant's SEP qualified as an ERISA plan under which Defendant was required to open a retirement account and make contributions thereto on Plaintiff's behalf.  (Doc. 3 at 10-11).

Nevertheless, the Court of Appeals for the Fifth Circuit requires that claimants seeking ERISA plan benefits in court must first exhaust the administrative remedies that are available under the plan.  *Bourgeois v. Pension Plan for Employees of Santa Fe Intern. Corp.*, 215 F.3d 475, 479 (5th Cir. 2000).  Plaintiff did not allege in his complaint either that he exhausted such remedies or that it would have been futile for him to do so under the circumstances.  *Id.* Accordingly, his ERISA claim under section 1132 fails, but the Court will allow him the

opportunity to amend his complaint to restate his ERISA claim if he wishes to do so.[1]  *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) (stating that dismissing an action with prejudice after giving the plaintiff only one opportunity to state a claim is ordinarily unjustified).

### 2.    FLSA Claim

Defendant next urges that dismissal of Plaintiff's overtime claim under the FLSA is warranted because any such claim is barred by the statute of limitations.  (Doc. 28 at 4).  Defendant acknowledges Plaintiff's attempt to avoid the limitations bar by arguing that he did not learn of his status as an "employee" until Defendant testified to such during the FINRA proceeding in December 2009.  *Id.* at 5.  Nevertheless, Defendant argues that this Court should reject that argument because Plaintiff (1) admitted in his December 2008 FINRA statement of claim that he had seen a March 2008 email from defense counsel suggesting that Plaintiff was an employee; and (2) noted in his statement of claim that Defendant said he wanted to reclassify Plaintiff's tax status to "employee."  *Id.* at 5-6 (citing Doc. 24-1, App. at 19, 20, 30).

On the merits, Defendant asserts that Plaintiff was an exempt employee under the FLSA because Plaintiff alleged in his FINRA statement of claim that he was the "Vice President and Chief Investment Strategist at Beacon Financial Advisors."  *Id.* at 6 (citing Doc. 24-1, App. at 30).  Defendant notes that Plaintiff claimed he was an "executive employee" whose duties were primarily those of management, he was involved in general business operations and exercised independent judgment, and he analyzed financial information and advised clients regarding financial products based on his advanced knowledge in that field.  *Id.* at 6-7 (citing Doc. 10 App.

_____

[1] While the Court recognizes Defendant's argument that no ERISA-based plan exists because his SEP is not covered by ERISA, the undersigned will not address that issue at this time.  First, the SEP plan documents are not a part of the record since this case is before the Court on summary judgment.  Second, preliminary research indicates that the law is not clear cut on whether SEPs are covered by ERISA.

at 4).  Lastly, Defendant contends that Plaintiff's FLSA claim should be dismissed because it is "incomprehensible" insofar as he fails to allege sufficiently specific facts.  *Id.* at 7-8.

Plaintiff responds that Defendant has contradicted his prior FINRA testimony regarding the nature of Plaintiff's work because he previously averred that Plaintiff was an administrative employee who had no investment responsibilities and engaged in no independent decision-making.  (Doc. 31 at 3, 13).  Plaintiff also denies that his claims are time-barred, noting that Defendant testified in December 2009 that Plaintiff was his employee, which is the first time that Defendant informed Plaintiff that he believed Plaintiff was his employee.  *Id.* at 7, 25.  Prior to that time, Plaintiff asserts that Defendant repeatedly acknowledged him as a partner, even after they had begun to litigate in advance of the arbitration.  *Id.* at 8-11, 18-19.  Plaintiff contends that Defendant is suggesting that he should have predicted that Defendant was going to lie at the FINRA arbitration and testify that Plaintiff was an employee.  (Doc. 31 at 2, 5, 19-21, 23).

As for any inference in the March 2008 email from defense counsel that Plaintiff might be viewed as an employee, Plaintiff states that he did not believe that to be true.  *Id.* at 26-30.  Finally, Plaintiff asserts that, based on Defendant's testimony before the FINRA about Plaintiff's low-level administrative role in the business, Plaintiff qualifies as a non-exempt employee under the FLSA.  *Id.* at 32-33.  Defendant replies that Plaintiff has repeatedly argued and admitted that he was a partner in Defendant's business, so he has "pleaded himself out of an FLSA claim." (Doc. 37 at 5-7).

If a defendant's violation of FLSA is not willful, a two year statute of limitations applies.  29 U.S.C. § 255.  If the violation is found to be willful, a three year statute of limitations governs, and as a result, employees can collect three years of unpaid wages and/or overtime compensation.  *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003).  Generally, a

cause of action under the FLSA accrues on each regular payday immediately following the work period during which the services were rendered for which the overtime pay is claimed. *Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261, 271 (5th Cir. 1987). The instant case is different from the usual case, however, because here Plaintiff alleges in his complaint that he did not become aware of his status as an employee who was eligible to file a FLSA claim until Defendant testified regarding the nature of Plaintiff's duties at the FINRA hearing in December 2009. (Doc. 3 at 5; Doc. 31 at 7).

Equitable tolling of the statute of limitations can apply in FLSA cases. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) ("This equitable doctrine is read into every federal statute of limitation."). If a plaintiff has been "actively misled" by the defendant about the cause of action or "is prevented in some extraordinary way from asserting his rights," then tolling may be appropriate. *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). Equitable tolling allows a plaintiff to pursue time-barred claims where the "strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (quotation omitted). The doctrine applies only in "rare and exceptional circumstances." *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002). Additionally, the doctrine requires that the plaintiff has diligently pursued his rights, *Caldwell v. Dretke*, 429 F.3d 521, 530 n.23 (5th Cir. 2005), but was unable through the exercise of due diligence "to discover essential information bearing on the existence of his claim," *Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992).

In an effort to demonstrate that Plaintiff knew more than three years ago that Defendant considered him to be an "employee" rather than a partner, Defendant cites to several pages from Plaintiff's December 2008 FINRA statement of claim. *See* Doc. 24-1 at 2-44. As an initial matter, this case is before the Court on a motion to dismiss where review generally is limited to

the four corners of the plaintiff's complaint. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

Even if the undersigned were to consider the statements in question, however, they do not

demonstrate that Plaintiff knew he was an employee such that he was entitled to file a FLSA

claim at that time. Indeed, Plaintiff's complaint makes clear that the issue of whether he was an

employee versus a partner was hotly contested during the FINRA arbitration. It was only after

Plaintiff's claims were rejected by the FINRA that the nature of his business relationship with

Defendant was settled.[2] In fact, if Plaintiff had attempted to file a FLSA claim asserting that he

was an employee while his arbitration case was pending, that would have been deleterious to his

FINRA claims, as he would have been taking a directly contradictory position in simultaneous

actions. Accordingly, the Court finds that strictly applying the statute of limitations would be

inequitable in this case. *Patterson*, 211 F.3d at 930. Plaintiff diligently pursued his rights, but

could not have learned of his status as an employee until, at the earliest, the FINRA rejected his

claim that he and Defendant were partners. *Caldwell*, 429 F.3d at 530 n.23.

The Court next considers Defendant's argument that Plaintiff is exempt from FLSA

protection because he asserted in his FINRA statement of claim that he was the "Vice President

and Chief Investment Strategist at Beacon Financial Advisors." The FLSA requires employers

to pay overtime compensation to employees who work more than 40 hours per regular

workweek. 29 U.S.C. § 207(a)(1). Exempt from the FLSA, however, are individuals "employed

in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

The Court rejects Defendant's argument that Plaintiff qualifies for one of these FLSA

exemptions. First, that is not the position that Plaintiff asserts in his complaint, which this Court

must take as true. *Bell Atlantic*, 550 U.S. at 572. In fact, the complaint alleges that while

___
[2] Indeed, the question may not have been fully resolved until Plaintiff exhausted his appeals in federal court, although the undersigned need not determine that issue at this juncture.

Plaintiff believed he was a partner with Defendant for many years, based on Defendant's FINRA testimony and subsequent events, he actually was an employee. *See* Doc. 3 at 2, 4, 8-9, 11-13. Moreover, in the FINRA proceedings, the issue of whether Plaintiff was Defendant's business partner or merely a low-level employee was highly contested, with Plaintiff arguing the former and Defendant the latter. The matter was settled in Defendant's favor. Defendant cannot now be heard to argue the opposite -- that Plaintiff is exempt from FLSA protection because he occupied an executive, administrative, or professional position.

"Judicial estoppel is an equitable doctrine designed to protect the integrity of judicial proceedings by preventing litigants from asserting contradictory positions for tactical gain." *Republic of Ecuador v. Connor*, 708 F.3d 651, 654 (5th Cir. 2013). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (quotation and citation omitted). Thus, a party may be estopped from asserting a position in a judicial proceeding where it has previously persuaded a court to adopt a clearly contrary position to the disadvantage of an opponent. *Id.* The Supreme Court has set forth various factors that will often inform the decision of whether to apply the judicial estoppel doctrine in a particular case. *Id.* at 751. However, the Court has refused to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," stating instead that different considerations "may inform the doctrine's application in specific factual contexts." *Id.* Nevertheless, the three enumerated factors that the Court set forth are a good starting point in this case.

First, a party's later position must be "clearly inconsistent" with its earlier position.  *Id.* at 750; *see also In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).  Second, the Court will inquire whether the party actually succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled."  *New Hampshire*, 532 U.S. at 750.  The judicial acceptance requirement ensures that estoppel applies only in situations where the integrity of the judiciary is threatened.  *In re Oparaji*, 698 F.3d 231, 237 (5th Cir. 2012).  In other words, the purpose of the requirement is to "minimize the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigate the corresponding threat to judicial integrity."  *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 398 (5th Cir. 2003) (alterations and quotations omitted).  A third consideration is whether the party seeking to assert the inconsistent position would either gain an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *New Hampshire*, 532 U.S. at 751.  "Because judicial estoppel is an equitable doctrine, courts may apply it flexibly to achieve substantial justice."  *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011) (*en banc*).

In the case at hand, each of the factors described by the Supreme Court in *New Hampshire* weighs in Plaintiff's favor.  First, Defendant's current position that Plaintiff is exempt from the FLSA because of his status as an executive, professional or administrator is directly contradictory to the statements Plaintiff alleges Defendant made at the FINRA hearing to the effect that Plaintiff was a low-level employee.  (Doc. 3 at 5-7).  Second, Defendant apparently succeeded in persuading the FINRA arbitration panel to accept his position because Plaintiff alleges in his complaint that the panel ruled against Plaintiff.  *Id.* at 7.  Further, the

arguments Defendant presented to the panel to this effect were intended to induce the panel's reliance. *Hall*, 327 F.3d at 398-99 (holding that the judicial estoppel doctrine may be applied whenever a party makes an argument intending to induce a court's reliance). Additionally, judicial acceptance of Defendant's new position would create the perception that one of the two tribunals was misled. A finding by this Court that Plaintiff was a professional, executive, or administrator would directly conflict with the arbitrators' dismissal of Plaintiff's claims in which he asserted that position. *Id.* at 398. Third, if Defendant is not estopped from taking this inconsistent position, he both gains an unfair advantage and imposes an unfair detriment on Plaintiff's ability to litigate his current claims, which are dependent on his status as an employee, rather than a partner. *New Hampshire*, 532 U.S. at 751.

Defendant's final argument is that Plaintiff's FLSA claim should be dismissed because it is "incomprehensible" and insufficient facts are alleged. (Doc. 28 at 7-8). Liberally construing the *pro se* Plaintiff's complaint, the Court disagrees. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (providing that the courts should liberally construe *pro se* pleadings). The discovery process is the appropriate forum for Defendant to further flesh out the substance of Plaintiff's claims. Defendant's *Motion to Dismiss* Plaintiff's FLSA claim is **DENIED**.

### 3. Internal Revenue Code Claims

Defendant next urges that Plaintiff's attempt to sue him for failure to withhold income taxes must be dismissed because there is no such private cause of action. (Doc. 28 at 8). Plaintiff responds that he is unable to recover from the Internal Revenue Service ("IRS") the self-employment taxes that he paid for the last ten years because the IRS will not allow him to amend his returns "as the statute has expired." (Doc. 31 at 37).

Plaintiff attempts to raise claims under the Internal Revenue Code's employment tax laws, namely (1) the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. §§ 3101, 3102, 3121; (2) the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. §§ 3301, 3306; and (3) 26 U.S.C. § 3509.  (Doc. 3 at 11-13).  In order for the Court to find that a private right of action exists under a statute that does not expressly confer such a right, there must be "a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone."  *Cort*, 422 U.S. at 79.  *Cort* set forth a four-part test to determine if an implied private right of action exists: (1) whether the plaintiff is one of the class for "whose especial benefit the statute was intended"; (2) whether there is any indication of legislative intent to create such a remedy; (3) whether implying a remedy is consistent with the underlying purpose of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law.  *Id.*  While the Fifth Circuit has not yet addressed the question, two other courts of appeal have addressed the issue in the *Cort* framework and concluded that FICA does not create a private right of action to remedy purported employee misclassifications.  *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 67 (3d Cir. 2008); *McDonald v. Southern Farm Bureau Life Ins. Co.*, 291 F.3d 718, 726 (11th Cir. 2002); *see also Marren v. Stout*, -- F.Supp.2d --, 2013 WL 1117539, *11 (W.D. Tex. 2013).

Addressing the *Cort* factors in this case, a review of the FICA reveals that it is a tax-assessing series of statutes enacted to raise revenue for the federal government.  The FICA statutes that Plaintiff lists concern taxation rates, deduction and collection procedures, and explanations of what types of employment and wages are covered.  *See* 26 U.S.C. §§ 3101-02, 3121; *McDonald*, 291 F.3d at 723.  Thus, it cannot be said that the FICA was enacted for the especial benefit of individuals such as Plaintiff.  *Cort*, 422 U.S. at 79.  Under factor (2), "the legislative history is completely devoid" of any intention to create a private right of action under

FICA, which is demonstrated by the verbiage of the statutes themselves.  *McDonald*, 291 F.3d at

724.  As to factor (3), allowing private lawsuits under FICA would undermine the extensive IRS

procedures that were expressly created to assist workers who felt that they were assessed

improper FICA taxes.  *Id*. at 725-26.  Because the question of legislative intent is the "central

inquiry" in this analysis, *see Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979), the

Court's conclusion is unaffected by the fact that the fourth *Cort* factor supports implying a

private cause of action.  *See Glanville v. Dupar*, 727 F.Supp.2d 596, 600 (S.D. Tex. 2010) ("This

court believes that if the Fifth Circuit were to consider this issue, it would follow the reasoning

of the Third and Eleventh Circuits to find no implied private right of action under FICA.").  In

sum, the undersigned finds that Plaintiff is not entitled to assert a private cause of action against

Defendant under FICA sections 3101, 3102, and 3121.  Accordingly, his claims under those

sections are **DISMISSED WITH PREJUDICE**.  *McConathy*, 131 F.3d at 561-62.

Next, the Court considers whether Plaintiff may bring a private cause of action under the

FUTA.  The FUTA statutes that Plaintiff sues under (1) concern the tax the government requires

employers to pay based on the wages paid to their employees; and (2) contain definitions of

various statutory terms.  *See* 26 U.S.C. §§ 3301, 3306.  The existence of an implied private right

of action under FUTA does not appear to have been considered by any federal appellate court.

The analysis, however, follows the previous discussion of a private remedy under FICA.

Similar in nature to the FICA statutes, the FUTA taxes "clearly are intended to raise

revenue" for the government.  *Bob Jones University v. Simon*, 416 U.S. 725, 741 n.12 (1974).

Further, there is no apparent legislative intent to create a private cause of action under the

statutory scheme.  Additionally, as is the case with the FICA statutes, the existence of expansive

administrative remedies Congress established for tax-related disputes is inconsistent with an

implied private right of action for employees to sue their employers for nonpayment of FUTA taxes.  *See McDonald*, 291 F.3d at 725-26.  Moreover, the majority of federal district courts that have addressed the issue have held that no private cause of action exists for an employer's failure to pay unemployment taxes under FUTA.  *See Glanville*, 727 F.Supp.2d at 600; *White v. White Rose Food*, 62 F.Supp.2d 878, 886-87 (E.D.N.Y. 1999) ("[A]s the [c]ourt finds that the tax statutes at issue are not intended for the benefit of the plaintiffs [but for the government's benefit], the [c]ourt holds that a private cause of action cannot exist under the provisions of FUTA."); *see also Gifford v. Meda*, 2010 WL 1875096, *10 n.9 (E.D. Mich. 2010) (granting defendant's motion to dismiss plaintiff's FUTA claims because that act does not create a private cause of action); *Bendsen v. George Weston Bakeries Dist.*, 2008 WL 4449435, *4 (E.D. Mo. 2008) (same); *Spilky v. Helphand*, 1993 WL 159944, *3-4 (S.D.N.Y. 1993) (same).  Accordingly, this Court finds that there is no implied private right of action under FUTA.

Plaintiff's final cause of action is based on 26 U.S.C. § 3059.  That section merely establishes the percentage amounts to be charged to employers if they fail to withhold taxes from their employees' wages.  Plaintiff's claim under this statute fails for the same reasons his claims under FICA and FUTA failed.  *See McDonald*, 291 F.3d at 723-26.  Thus, Plaintiff's claims based on 26 U.S.C. §§ 3301, 3306, and 3509 are **DISMISSED WITH PREJUDICE**. *McConathy*, 131 F.3d at 561-62.

## CONCLUSION

For the foregoing reasons, Defendant's *Motion to Dismiss* (Doc. 27) is **GRANTED IN PART**.  If Plaintiff wishes to file an amended complaint re-pleading his ERISA claim, he is **DIRECTED** to do so by May 13, 2013.  Otherwise, the Court will dismiss that claim with prejudice.  If Plaintiff files an amended complaint, which by operation completely supersedes the

previous one, he should not include the claims that the undersigned has dismissed in this

*Memorandum Opinion*.

       **SO ORDERED** on May 1, 2013.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE